## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

CROSSROADS MALL REALTY
HOLDING, LLC,
a Michigan limited liability company in Good standing

     Plaintiff,                         Case No. 23-

     v.                              Hon.

 KALAMAZOO COUNTY TRANSPORTATION AUTHORITY,
KALAMAZOO COUNTY, THE CITY OF PORTAGE, and
CENTRAL COUNTY TRANSPORTATION AUTHORITY,

     Defendants.

---

SERRA LAW FIRM, PLLC
(dba THE PRIVATE FIRM)
Reese Serra, Esq. (P74482)
William M. Donovan (P12892)
Mateusz Wozniak (P78554)
Attorneys for Plaintiff
125 E Third St, Ste. 100
Rochester, MI 48307
(248) 781-4501 / info@thefirm.net

---

## __VERIFIED COMPLAINT__

There is no other pending or resolved civil action arising
out of the transactions or occurrences alleged in this Complaint.

_____
/s/ *Reese Serra*
REESE SERRA (P74482)

NOW COMES Plaintiff, CROSSROADS MALL REALTY HOLDING, LLC, a Michigan limited liability company in good standing ("Crossroads" or "Plaintiff"), by and through their undersigned counsel, and for their First Verified Complaint against the Defendants KALAMAZOO COUNTY TRANSPORTATION AUTHORITY, KALAMAZOO COUNTY, THE CITY OF PORTAGE, and CENTRAL COUNTY TRANSPORTATION AUTHORITY, (collectively, "Defendants"), state as follows:

## JURISDICTION AND PARTIES

1. This is an action for violations of United States Constitutional and Michigan State Constitutional rights and other torts committed by Defendants.

2. This Court has federal question jurisdiction pursuant to 28 USC 1331.

3. Plaintiff, Crossroads is a Michigan limited liability company with its registered office in Wayne County, Michigan.

4. Crossroads owns Crossroads Mall in Portage, Michigan, located at 6650 South Westnedge Avenue Portage, MI 49024 (the "Property").

5. The Property and the mall located on the property are both privately owned by US persons.

6. Defendant Kalamazoo County Transportation Authority ("Kalamazoo Transit") is a public transportation department located in Kalamazoo County, at 530 N. Rose Street, Kalamazoo, MI 49007, providing county-wide transportation

services and is within the jurisdiction of this Court.

7.      Defendant Kalamazoo County is a municipal County located within the Western District of Michigan and is within the Jurisdiction of this Court.

8.      Defendant City of Portage is a municipality located in Kalamazoo County, Michigan ("Portage").

9.      Defendant Central County Transportation Authority ("Central Transit") is a public transportation department that manages and operates the Kalamazoo County Transportation Authority, located at 530 N. Rose Street, Kalamazoo, MI 49007.

10.     The amount in controversy exceeds $2,000,000, exclusive of interest, attorney's fees, and costs.

11.     The events giving rise to this lawsuit occurred within the City of Portage, County of Kalamazoo, State of Michigan.

## FACTUAL BACKGROUND & GENERAL ALLEGATIONS

12.     For over ten years, Defendants have been engaged in the illegal misappropriation, unauthorized use, and interference with the Property that is rightfully owned by Crossroads and in Crossroads's protected property interest of operating a business of a mall.

13.     Since approximately 2006, Defendants have continuously utilized the Property for public use without providing just compensation to Crossroads, without

initiating the process of condemnation under state or federal law, and without the consent of Crossroads (or its predecessors in interest).

14.    Defendants' misappropriation, interference with, and trespass to the Property have resulted in significant damage to Crossroads's private roadways and parking lots, damages to landscaping, underground drainage systems, fixtures, appurtenances, and other portions of the Property, deprivation of use of portions of the Property, diminution in value of the Property, and other business losses to Crossroads's business of operating a mall.

15.    Kalamazoo Transit was formed in 2006 with the passage of a millage to provide transportation services within Kalamazoo County.

16.    Kalamazoo Transit, Kalamazoo County, and The City of Portage have an agreement where the public transport services would be extended into parts of the City of Portage.

17.    Kalamazoo Transit first installed a bus stop on the Property in 2006 and did so without an easement, license, or written agreement authorizing the use of the Property.

18.    Upon information and belief, due to issues with the initial bus stop installed on the Property, Kalamazoo Transit moved the bus stop location to another location within the Property from 2011 to 2014, again without an easement, license, or written agreement authorizing the use of the Property.

19.    To date, no easement, license, or written agreement authorizing the use of the Property has been executed by the parties allowing Defendants to utilize any portion of the Property for a bus station, bus stop, or bus depot.

20.    On or around October 2016, Central Transit officially began to operate and manage the public transportation system in Kalamazoo County on behalf of or in partnership with Kalamazoo County and Kalamazoo Transit.

21.    Crossroads purchased the Property in January 2021. **See <u>Exhibit A-Crossroads Deed.</u>**

22.    Kalamazoo Transit's, Kalamazoo County's, the City of Portage's, and Central Transportation's illegal and improper use of the Property to establish a bus stop/exchange on the Property has resulted in significant damages to Crossroads, as described herein.

23.    Throughout the relevant timeframe, upon information and belief, Kalamazoo Transit and Central Transit greatly expanded the routes for their buses, effectively increasing the number of buses traveling onto the Property to approximately **tens of thousands** of bus trips per year.

24.    These actions by Kalamazoo Transit and Central Transit hereunder were done under the direction of, advice from, consent, or acquiescence of Kalamazoo County and the City of Portage.

25.    Presently, approximately **3,136 buses** traverse through the Property on

a monthly basis.

26.     Each illegal and improper bus trip onto the Property by Defendants exerts an extreme amount of weight, pressure, and wear and tear on the Property, contributing to further damages to Plaintiff.

27.     Defendants' actions, including but not limited to Defendants' significant increase in the volume of buses traveling on the Property, have led to:

    a.  a huge increase in the number of potholes/sinkholes on the road and parking lots of the Property,

    b.  damages to private roadways and parking lots on the Property,

    c.  damages to landscaping on the Property,

    d.  damages to underground drainage systems on the Property,

    e.  damages to fixtures, appurtenances, and other portions of the Property,

    f.  excessive traffic, congestion, and business loss,

    g.  increased wear and tear and utility usage on the Property, and

    h.  other damages to be discovered as discovery is ongoing.

28.     Defendants' actions and resulting damages have made traveling on the Property roads difficult and hazardous and have severely impacted the business of Crossroads. See **Exhibit B- Photos of Damages.**

29.     Defendants' actions as described herein have resulted in a deprivation of use of portions of the Property for Crossroads, diminution in value of the Property,

and significant business loss and damages to Crossroads.

30.     Several News articles have been published regarding the state of the roads on the Property. **See Exhibit C- News Articles.**

31.     These news articles have tarnished the property's reputation and opinion within the community causing business loss and less visitors.

32.     Several patrons, invitees, and guests of Crossroads have damaged their vehicles traveling the roads of the Property that were damaged by Defendants. **See Exhibit D-Receipts for Expenses Paid to Patrons, Invitees, and Guests.**

33.     As of the date of this filing, the current estimate to repair the damages caused by Defendants is estimated to exceed $2,000,000.

34.     Crossroads has contacted Defendants on numerous occasions, demanding that the damages that Defendants have caused to Crossroads be repaired /rectified, but Defendants have denied all such requests.

35.     Defendants have refused Crossroads' demands to repair the damages caused as stated herein and otherwise compensate Crossroads.

36.     Defendants have not initiated the process of expropriation or otherwise have not adhered to the Uniform Condemnation Procedures Act, MCL §213 ("UCPA"), et. seq.

37.     In the present case, all non-government party Defendants were operating as authorized government agents with actual and apparent authority for all

acts described herein.

## Governmental Immunity Does Not Apply

38.     The Michigan Governmental Tort Liability Act, MCL 691.1401, *et seq.* ("GTLA") generally provides immunity to liability arising out of the performance of a governmental function to governmental agencies, officers, and employees. MCL 691.1407(1).

39.     However, there are exceptions to the immunity provided by the GTLA, including but not limited to intentional torts, breach of contract, gross negligence, and constitutional claims.

40.     In <u>Odom v Wayne Co,</u> 482 Mich 459, 760 NW2d 217, 224-25 (2008), the Michigan Supreme Court clarified the standards concerning whether an individual government employee was entitled to qualified immunity as to tort liability. The Michigan Supreme Court found that as to *intentional* torts, pursuant to MCL 691.1407(3), the test set forth in <u>Ross v Consumers Power Co</u> *(On Rehearing)*, 420 Mich 567, 363 NW2d 641 (1984) is the correct standard. The Michigan Supreme Court then restated the *Ross* test:

> Under Ross, to be immune from liability for intentional torts, the governmental employee must first establish that the acts were taken "during the course of ... employment and" that the employee was "acting, or reasonably believe[d] [he was] acting, within the scope of [his] authority[.]"
>                                        …
> The governmental employee must also establish that he was acting in "good faith." *Ross* did not elaborate on this element, relying instead on

Prosser on Torts and the cases cited therein. Prosser noted that the "considerable majority of the state courts take the position that **there is no immunity where the inferior officer does not act honestly and in good faith, but maliciously, or for an improper purpose." "[O]fficial immunity should not become a cloak for malicious, corrupt, and otherwise outrageous conduct on the part of those guilty of intentional abuse of power...."** The cases cited by Prosser indicate that there is no immunity when the governmental employee acts *maliciously* or with a *wanton or reckless disregard of the rights of another.* Odom v Wayne Co., 760 NW2d 217, 224-25 (Mich. 2008).

41.     Defendants' conduct was at all times at least grossly negligent, and in many, if not all, instances were malicious, intentional, and directly aimed at harming Plaintiff.

42.     Defendants cannot reasonably rely on any governmental immunity to defend the allegations contained herein because Defendants' actions constitute the intentional misuse of governmental authority.

## COUNT I
## Trespass to Land

43.     Plaintiff incorporates by reference all allegations contained in this Verified Complaint as though fully set forth herein.

44.     A direct trespass upon, or the interference with the use or enjoyment of, land that results from a physical intrusion caused by, or under the control of, a governmental entity" constitutes compensable injury. Hadfield v Oakland Co Drain Comm'r, 430 Mich 139, 145; 422 NW2d 205 (1988). Often referred to as the trespass-nuisance exception to governmental immunity, this Court more precisely

defined the exception "as trespass or interference with the use or enjoyment of land caused by a physical intrusion that is set in motion by the government or its agents and resulting in personal or property damage. The elements may be summarized as: condition (nuisance or trespass); cause (physical intrusion); and causation or control (by government)." Id. at 169. See also Li v Feldt (After Remand), 434 Mich 584, 594; 456 NW2d 55 (1990). Peterman v. Department of Natural Resources, 446 Mich. 177, 205, 521 NW2d 499 (1994)

45.     Crossroads owns the Property, **See Exhibit A (Deed),** and the business operation of a mall located on the Property.

46.     Defendants intentionally installed a public transportation stop/exchange onto the Property without authorization from Crossroads and in direct contravention to Crossroads's constitutionally protected property interests.

47.     Defendants intentionally included the Property in several transportation routes without authorization from Crossroads.

48.     Defendants charge considerable fees to passengers who travel to and from the Property, but Defendants do not share any revenue procured with Crossroads.

49.     Defendants intentionally increased the number of buses traversing the Property without proper authorization from Crossroads and directly contravened Crossroads's constitutionally protected property interests.

50.   Defendants' intentional actions as described herein constitute a possession of Crossroads's Property that was unauthorized by Crossroads.

51.   Defendants' intentional actions constitute a trespass and/or interference with Crossroads's use, enjoyment, and possession of the Property.

52.   Defendants' actions have directly and proximately resulted in:

   a.   a huge increase in the number of potholes/sinkholes on the road and parking lots of the Property,

   b.   damages to private roadways and parking lots on the Property,

   c.   damages to landscaping on the Property,

   d.   damages to underground drainage systems on the Property,

   e.   damages to fixtures, appurtenances, and other portions of the Property,

   f.   increased wear and tear and utility usage on the Property, and

   g.   other damages to be discovered as discovery is ongoing.

53.   As of the date of this filing, the current estimate to repair the damages caused by Defendants is estimated to exceed $2,000,000.

WHEREFORE, Plaintiff requests that this Honorable Court enter a judgment in its favor against Defendants for Count I in excess of $2,000,000, plus interest, attorney's fees, costs, and any other relief the Court deems appropriate.

## COUNT II
## Nuisance

54.   Plaintiff incorporates by reference all allegations contained in this

Verified Complaint as though fully set forth herein.

55.    The essential element of a nuisance is a wrongful, continuing, impending danger to the lives or health of the public, or the legitimate property or personal rights of private persons peculiarly subject to the danger. A condition so threatening as to constitute an impending danger to the public welfare is a nuisance. 19 Michigan Civil Jurisprudence, Nuisances, § 1, pp 62-63.

56.    Defendants willfully installed a bus stop/exchange on Crossroads's Property.

57.    Defendants' installation of the bus stop/exchange constitutes a substantial interference with Crossroads's use and enjoyment of the Property.

58.    As described herein, Defendants' actions were intentional or negligent.

59.    Defendants willfully established several bus routes that include the Property as a destination against the property rights of Crossroads.

60.    These public transportation buses travel onto the Property roughly 3,136 times per month.

61.    The weight of buses on the road several times per day has significantly damaged the property, roadways, parking lots, landscaping, and other areas of the Property as well as caused excessive traffic, congestion, and business loss.

62.    Additionally, as a direct and proximate result of Defendants' actions, giant potholes/sinkholes have appeared along the routes traversed by these buses on

the Property and adjacent areas.

63.    The presence of these giant potholes/sinkholes poses a significant risk to vehicular traffic on the Property, making driving hazardous

64.    Drainage systems under these potholes/sinkholes have also been damaged due to the weight of the buses, as have other portions of the Property.

65.    Defendants' actions, as described herein, were wrongful and continuing and pose an impending danger to the lives or health of the public or Crossroads's legitimate property or personal rights.

66.    As of the date of this filing, the current estimate to repair the damages caused by Defendants is estimated to exceed $2,000,000.

WHEREFORE, Plaintiff requests that this Honorable Court enter a judgment in its favor against Defendants for Count II in excess of $2,000,000, plus interest, attorney's fees, costs, and any other relief the Court deems appropriate.

### COUNT III
### Violation of 42 USC § 1983 and Inverse Condemnation

67.    Plaintiff incorporates by reference all allegations contained in this Verified Complaint as though fully set forth herein.

68.    The United States Constitution protects citizens' property interests by providing that the government may not take property without paying just compensation. U.S. Const. amend XIV.

69.    A "de facto taking" is one in which the government may not have

categorically taken *all* property but rather takes an action that leads to "a diminution in the value of the property or a partial destruction can constitute a taking." <u>Cummins v Robinson Twp</u>, 283 Mich App 677, 708, 770 NW2d 421 (2009).

70.     Defendants' actions as described herein constitute a de facto taking of Plaintiff's Property and constitutionally protected property interests.

71.     Plaintiff has a protected property interest pursuant to the Due Process Clause of the Fourteenth Amendment, which includes a constitutionally legitimate claim to own its Property free from unreasonable and arbitrary government interference.

72.     The actions by Defendants as described herein constitute unreasonable and arbitrary government interference with Plaintiff's Property and constitutionally protected property interests.

73.     When determining whether a Plaintiff possesses a protected property interest, courts often look to state law. <u>Howard ex rel. Estate of Howard v Bayes</u>, 457 F3d, 572 (6th Cir. 2006).

74.     "Property interests do not derive from the Constitution, but rather are created and defined by "existing rules or understandings that stem from independent sources such as state law. . . ."" <u>Silberstein v City of Dayton</u>, 440 F3d 306, 311 (6th Cir. 2006).

75.     The government may not deprive a person of liberty or property through

the arbitrary exercise of power. <u>Landon  Holdings,  Inc  v  Grattan  Twp</u>, 257  Mich App  154,  173, 667 NW2d 93 (2003).

76.    In the present case, Defendants' actions clearly deprived Plaintiff of its property rights in the Property.

77.    In addition to Plaintiff's protected property interest in the Property,  the United States Supreme Court has long recognized that Plaintiffs, like Crossroads, have a protected property interest in its personal property and the goodwill of Plaintiff's business in operating the mall. <u>Sambo's Rests, Inc v City of Ann Arbor</u>, 663 F2d 686, 687 (6th Cir 1981).

78.    Plaintiff, as the owner of the Property, has an interest in the Property and in Plaintiff's business operations of operating a mall under both the Fifth and Fourteenth Amendments of the United States Constitution and pursuant to 42 USC § 1983.

79.    In <u>Monell v Dept of Social Services</u>, 436 US 658 (1978), the United States Supreme Court held that a municipality can be held liable under 42 USC § 1983 for constitutional violations committed by its employees or agents, including the taking of a property interest.

80.    In the present case, all non-government party Defendants were operating as authorized government agents with actual and apparent authority for all acts described herein.

81.    Under constitutional law, Plaintiff's property interests are clearly established.

82.    Plaintiff was denied Due Process when, as described above, Defendants appropriated the Property for a public transportation stop/exchange and to conduct government business using the Property and Plaintiff's protected property interests.

83.    Defendants engaged in concerted activity and hostile actions directed towards Plaintiff with an intent to harm Plaintiff's ongoing business and property interests as well as pursue their own self-interest.

84.    The government may not deprive a person of liberty or property through the arbitrary exercise of power. Landon Holdings, Inc v Grattan Twp, 257 Mich App 154, 173, 667 NW2d 93 (2003).

85.    Governmental action is arbitrary and capricious when it "lacks an adequate determining principle, when it reflects an absence of consideration or adjustment with reference to principles, circumstances or significance, or when it is freakish or whimsical." Wescott v Civil Service Com, 298 Mich App 158, 162, 825 NW2d 674 (2012).

86.    Governmental "[C]onduct deliberately intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." County of Sacramento v Lewis, 523 US 833, 834 (1998).

87.     The scheme described herein by Defendants was the policy and custom of Defendants, whose ultimate goal was to disrupt, interfere with, use to their own benefit, and obtain Plaintiff's constitutionally protected property interests and interests in the Property.

88.     As a direct and proximate result of the Defendants' conduct, Plaintiff's procedural and substantive due process rights were violated.

89.     Prior to Defendants' actions in taking Plaintiff's property interests in the Property and Plaintiff's business of operating a mall, Plaintiff received no notice and had no opportunity to be heard.

90.     Plaintiff was deprived of the use of the Property by Defendants' actions, as described herein, Defendants have inversely condemned the Property.

91.      As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered and continues to suffer irreparable harm and damages.

92.     Plaintiff hereby seeks all damages compensable under the law, including but not limited to: monetary and compensatory damages, incidental and consequential damages, costs, expenses, and attorneys' fees, harm to Crossroad's reputation within the community, and other damages to be discovered as discovery is ongoing.

WHEREFORE, Plaintiff requests that this Honorable Court enter a judgment in its favor against Defendants for Count III in excess of $2,000,000, plus interest,

attorney's fees, costs, and any other relief the Court deems appropriate.

## COUNT IV
### Michigan Constitutional Tort Claim

93.    Plaintiff incorporates by reference all allegations contained in this Verified Complaint as though fully set forth herein.

94.    Kalamazoo Transit, Kalamazoo County, Central Transit, and the City of Portage are abusing their position as a public entity, and through its officers and/agents, including Sean McBride, engaged in a scheme to harm Plaintiff's ongoing business, contractual, and/or property interests.

95.    This scheme was the policy and custom of Defendants, whose ultimate goal was to disrupt, interfere with, and/or destroy Plaintiff's ongoing business, contractual, and/or property interests.

96.    Plaintiff has several rights under the Michigan Constitution, including their right to equal protection of the law, Const 1963 Art 1 § 2; their right not to have any of their contracts impaired, Const 1963 Art 1 § 10; and their right not to be deprived of life, liberty, or property without due process of law, Const 1963 Art 1 § 17.

97.    By employing the scheme previously described and carried out as a custom and policy of Defendants, the scheme amounted to be the moving force behind the violation of Plaintiff's aforementioned rights under the Michigan Constitution.

98.    As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered and continues to suffer irreparable harm and damages.

99.    Plaintiff hereby seeks all damages compensable under the law, including but not limited to: monetary and compensatory damages, incidental and consequential damages, costs, expenses, and attorneys' fees, harm to Crossroad's reputation within the community, and other damages to be discovered as discovery is ongoing.

WHEREFORE, Plaintiff requests that this Honorable Court enter a judgment in its favor against Defendants for Count IV in excess of $2,000,000, plus interest, attorney's fees, costs, and any other relief the Court deems appropriate.

### <u>COUNT V</u>
### 42 U.S.C. § 1983 - Violations of the Takings Clause

100.   Plaintiff incorporates by reference all allegations contained in this Verified Complaint as though fully set forth herein.

101.   The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation." U.S. Const. Amend. V.

102.   Plaintiff had a cognizable property interest in the Property and in Plaintiff's business of operating a mall.

103.   By using Plaintiff's property for a public transportation stop/exchange without authorization and/or an easement, Defendants caused a *de facto* taking of

Plaintiff's property and deprivation of Plaintiff's constitutionally protected rights in the Property and Plaintiff's business of operating a mall.

104.   In addition, by refusing to offset the cost of maintaining and repairing the roads used by the public transportation service, Defendants have caused a diminution in the value of Plaintiff's property.

105.   Plaintiff's property was seized, intruded on, and/or diminished in value by Defendants' actions.

106.   Defendants did not provide any compensation to Plaintiff as a result of their actions.

107.   As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered and continues to suffer irreparable harm and damages.

108.   Plaintiff hereby seeks all damages compensable under the law, including but not limited to: monetary and compensatory damages, incidental and consequential damages, costs, expenses, and attorneys' fees, harm to Crossroad's reputation within the community, and other damages to be discovered as discovery is ongoing.

WHEREFORE, Plaintiff requests that this Honorable Court enter a judgment in its favor against Defendants for Count V in excess of $2,000,000, plus interest, attorney's fees, costs, and any other relief the Court deems appropriate.

**<u>COUNT VI</u>**
**Michigan Constitutional Takings Claim**

Page 20 of 24

109.   Plaintiff incorporates by reference all allegations contained in this Verified Complaint as though fully set forth herein.

110.   Private property shall not be taken for public use without just compensation. Michigan Constitution of 1963 Art. 10, § 2.

111.   Plaintiff has a cognizable property interest in the Property and the business of Crossroads in operating a mall.

112.   By using Plaintiff's property for a public transportation stop/exchange without authorization and/or an easement, Defendants caused a *de facto* taking of Plaintiff's property and deprivation of Plaintiff's constitutionally protected property rights in both the Property and Plaintiff's business operations of a mall.

113.   In addition, Defendants' actions in maintaining a major public transportation service on Plaintiff's Property has caused a significant diminution in the value of Plaintiff's property.

114.   Plaintiff's Property was seized, intruded on, and/or diminished in value by Defendants' actions as described herein.

115.   Defendants did not provide any compensation to Plaintiff as a result of their actions.

116.   As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered and continues to suffer irreparable harm and damages.

117.   Plaintiff hereby seeks all damages compensable under the law,

including but not limited to: monetary and compensatory damages, incidental and consequential damages, costs, expenses, and attorneys' fees, harm to Crossroad's reputation within the community, and other damages to be discovered as discovery is ongoing.

WHEREFORE, Plaintiff requests that this Honorable Court enter a judgment in its favor against Defendants for Count VI in excess of $2,000,000, plus interest, attorney's fees, costs, and any other relief the Court deems appropriate.

## COUNT VII
## Civil Conspiracy

118. Plaintiff incorporates by reference all allegations contained in this Verified Complaint as though fully set forth herein.

119. Defendants engaged in concerted action with those known and unknown, including Kalamazoo Transit, Kalamazoo County, City of Portage, and Central Transit, to take, interfere with, use, trespass on, and otherwise impact Plaintiff's Property and Property interest in operating a mall.

120. Defendants engaged in concerted action with those known and unknown, including Kalamazoo Transit, Kalamazoo County, City of Portage, and Central Transit, to tortuously interfere with Plaintiff's business and/or business expectancy, property rights, and interest in the Property.

121. Defendants took these actions for an unlawful purpose, i.e., to commit a taking of Plaintiff's Property and Property rights, a trespass to Plaintiff's Property,

and a Nuisance to Plaintiff.

122. As a direct and proximate result of the Defendants' concerted actions, Plaintiff has suffered and continues to suffer irreparable harm and damages.

123. Upon information and belief, Kalamazoo County is vicariously liable for the actions of its agents, Kalamazoo Transit and Central Transit, each who acted with actual and apparent authority.

124. Upon information and belief, Portage is vicariously liable for the actions of its agents, Kalamazoo Transit and Central Transit, each who acted with actual and apparent authority.

125. Plaintiff hereby seeks all damages compensable under the law, including but not limited to: monetary and compensatory damages, incidental and consequential damages, costs, expenses, and attorneys' fees, harm to Crossroad's reputation within the community, and other damages to be discovered as discovery is ongoing.

WHEREFORE, Plaintiff requests that this Honorable Court enter a judgment in its favor against Defendants for Count VII in excess of $2,000,000, plus interest, attorney's fees, costs, and any other relief the Court deems appropriate.


### _PLAINTIFF'S VERIFICATION_:

I certify that the above information is true to the best of my knowledge, information, and belief.

x *Marni L Swicki*    Date: 5/8/2023

**Marni Sawicki – General Manager**
**Crossroads Mall Realty Holding, LLC**


Respectfully submitted,

SERRA LAW FIRM, PLLC
(dba THE PRIVATE FIRM)

Dated: May 9, 2023              */s/ Reese Serra*

Reese Serra (P74482)
Mateusz Wozniak (P78554)
William M. Donovan (P12892)
Attorneys for Plaintiff
125 E Third St, Ste. 100
Rochester, MI 48307
248-781-4500
info@thefirm.net