UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CROSSROADS MALL REALTY HOLDING, LLC,

    Plaintiff,

v.

KALAMAZOO COUNTY
TRANSPORTATION AUTHORITY, et al.,

    Defendants.
_____/

Case No. 1:23-cv-478

HON. JANE M. BECKERING

**OPINION AND ORDER**

This case is about the property rights of owners of a shopping mall in relation to public bus routes and a bus stop. Plaintiff Crossroads Mall Realty Holding, LLC ("Plaintiff") initiated this 42 U.S.C. § 1983 action against Defendants Kalamazoo County Transportation Authority ("KCTA"), County of Kalamazoo ("the County"), the City of Portage,[1] and Central County Transportation Authority ("CCTA") (collectively, "Defendants"). Pending before the Court is Defendants' motion to dismiss (ECF No. 22). For the reasons that follow, the Court grants the motion.

**I. BACKGROUND**

**A. Factual Background**

Plaintiff owns Crossroads Mall ("the Property") in Portage, Michigan (Am. Compl. [ECF No. 20] ¶ 4). Defendant KCTA provides public, county-wide transportation services, and Defendant CCTA manages and operates Defendant KCTA (*id.* ¶¶ 6, 8).

---

[1] The City of Portage was terminated from this case on June 28, 2023 (ECF No. 19).

On or around October 2020, before Plaintiff owned the Property, Defendant CCTA signed an Operating Agreement with Defendant KCTA, granting Defendant CCTA the authority to use Millage funds to operate and manage the public transportation system in Kalamazoo County on Defendant KCTA's behalf (*id.* ¶¶ 18, 20). Plaintiff alleges that "[s]ometime shortly after the Operating Agreement was executed" in 2020, Defendants "began engaging in a pattern of behavior to continuously, sporadically, and/or systematically" use the Property to operate a public transportation system for Kalamazoo County (*id.* ¶ 19). According to Plaintiff, upon information and belief, after executing the Operating Agreement and under the direction of the County, Defendants KCTA and CCTA "greatly expanded" their bus routes, "effectively increasing the number of buses traveling onto the Property to approximately tens of thousands of bus trips per year" (*id.* ¶¶ 22–23).

Plaintiff alleges that Defendant KCTA installed a public transportation bus stop on the Property without an easement, license, or written agreement authorizing the use of the Property (*id.* ¶ 15).[2] According to Plaintiff, upon information and belief, due to issues with the initially installed bus stop, KCTA moved the bus stop to another location within the Property, again without an easement, license, or written agreement (*id.* ¶ 16). To date, no easement, license, or written agreement authorizing Defendants' use of the Property has been executed (*id.* ¶ 17).

Plaintiff purchased the Property in January 2021 (*id.* ¶ 20). Plaintiff alleges that at present, approximately 3,136 buses traverse through the Property on a monthly basis (*id.* ¶ 24). According to Plaintiff, by using the Property to establish a bus stop/exchange, Defendants have engaged in

---

[2] Plaintiff's First Amended Complaint contains no allegations regarding the dates on which the bus stop on Plaintiff's property was erected or moved. In its original Complaint (ECF No. 1), Plaintiff alleged that the bus stop was erected in 2006 and that it was moved sometime between 2011 and 2014 (¶¶ 17–18). According to Plaintiff, the exact date on which Defendants entered the Property is in dispute (ECF No. 24 at PageID.345).

the illegal misappropriation, unauthorized use, and interference with the Property that is rightfully owned by Plaintiff and in Plaintiff's protected property interest of operating a business of a mall (*id.* ¶¶ 11, 21).  Plaintiff further alleges that Defendants have continuously used the Property for public use without providing just compensation to Plaintiff or initiating the process of condemnation under state or federal law, or without Plaintiff's consent (or that of its predecessors in interest) (*id.* ¶ 12).  Plaintiff states that prior to Defendants' actions, Plaintiff "received no notice and had no opportunity to be heard" (*id.* ¶ 68).

According to Plaintiff, Defendants repeatedly enter and exit the Property with their buses, and each "illegal and improper bus trip" exerts "an extreme amount of weight, pressure, and wear and tear on the Property" (*id.* ¶¶ 25, 45).  Specifically, Plaintiff lists a variety of negative effects that Defendants' actions have produced, including:  an increase in potholes/sinkholes and other damage to the Property roadways and parking lots; damages to landscaping, underground drainage systems, fixtures, appurtenances, and other portions of the Property; excessive traffic, congestion, and business loss; and increased wear and tear and utility usage on the Property, along with other damages "to be discovered as discovery is ongoing" (*id.* ¶ 26).

### B.  Procedural Posture

Plaintiff filed this action on May 9, 2023.  On July 4, 2023, on leave granted, Plaintiff filed a First Amended Complaint (Am. Compl. [ECF No. 20]), in which Plaintiff alleges that Defendants have engaged in the illegal misappropriation, unauthorized use, and interference with the Property without providing just compensation, initiating the process of condemnation, or consent (*id.* ¶¶ 11–12).  Plaintiff alleges the following five claims:

    I.     "Violation of 42 USC [*sic*] § 1983 and Inverse Condemnation"

    II.    "Michigan Constitutional Tort Claim"

  III.  "42 U.S.C. § 1983—Violations of the Takings Clause"

  IV.  "Michigan Constitutional Takings Claim"

  V.  "Civil Conspiracy"

(*id.* at PageID.204–216). For each claim, Plaintiff seeks a judgment against Defendants "in excess of $2,000,000 plus interest, attorney's fees, costs, and any other relief the Court deems appropriate" (*id.* at PageID.208, 210, 212, 215, 216).

On July 13, 2023, Defendants filed the instant motion to dismiss (ECF No. 22), seeking dismissal with prejudice of Plaintiff's First Amended Complaint. Plaintiff filed a response in opposition (ECF No. 24), and Defendants filed a reply (ECF No. 28). Having considered the parties' submissions, the Court concludes that oral argument is unnecessary to resolve the issues presented. *See* W.D. Mich. LCivR 7.2(d).

## II. ANALYSIS

### A. Motion Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes the court to dismiss a claim for relief in any pleading if it "fail[s] to state a claim upon which relief can be granted[.]" FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a complaint must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint

4

has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In deciding a motion to dismiss for failure to state a claim, the court must construe the complaint in the light most favorable to the non-movant and accept all well-pleaded factual allegations in the complaint as true. *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 750 (6th Cir. 2014). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. An assessment of "the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings," but the Court may consider "exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

"It is an established principle of law that a district court may properly dismiss a plaintiff's case for want of prosecution." *Scott v. State of Tenn.*, 878 F.2d 382 (6th Cir. 1989). Therefore, "[i]f a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion." *Id. See, e.g.*, *McIlwain v. Dodd*, No. 22-5219, 2022 WL 17169006, at *3 (6th Cir. 2022) ("The district court properly dismissed as abandoned the remaining negligence claims that were neither addressed in McIlwain's response to the motion to dismiss nor mentioned in the proposed amended complaint."); *Brooks v. Spiegel*, No. 20-6437, 2021 WL 4026728, at *2 (6th Cir. 2021) ("The district court correctly noted, however, that Doe abandoned those claims by failing to raise them in his brief opposing the

5

government's motion to dismiss the complaint."); *Bazinski v. JPMorgan Chase Bank, Nat'l Ass'n.*, 597 F. App'x 379, 380–81 (6th Cir. 2015) (per curiam) (affirming the district court's holding that the plaintiff had "abandoned Counts I, II, III, and VI of her complaint by failing to address them in her response to Chase's motion to dismiss").

### B. Discussion

The Court begins by addressing Defendants' motion to dismiss on the ground that Plaintiff's claims are time-barred. Next, the Court will turn to Defendants' motion to dismiss for failure to state a claim.

#### 1. **Statutes of Limitations**

As a threshold matter, Defendants argue that Plaintiff's claims should be dismissed because they are barred by the applicable statutes of limitations (ECF No. 22-1 at PageID.313). Specifically, Defendants argue that "[m]ost claims are governed by a three-year statute of limitations, which ran no later than 2017" and that Plaintiff's "state law inverse condemnation claim is governed by a six-year statute of limitation, which ran no later than 2020" (*id.*).

Plaintiff argues in response that its claims are timely, as it "is not suing for damages that may have been caused outside of the applicable statute of limitations period" (ECF No. 24 at PageID.341). Plaintiff further argues that because the exact date that Defendants entered its property and began a taking without just compensation is in dispute, the Court "should allow this matter to proceed to permit [Plaintiff] to initiate formal discovery" (*id.* at PageID.345). Plaintiff suggests that if it is discovered that its action was initiated more than six years from the date when Defendants first entered Plaintiff's property, the Court should hold that the claims are timely because Plaintiff seeks to remedy only present violations, which occurred within the limitations period (*id.*). The Court will first address the statute of limitations issues for Plaintiff's federal

claims and state constitutional tort claim, and then will address the limitations issues for Plaintiff's state constitutional takings claim.

    a. *Federal Claims and State Constitutional Tort Claim (Counts I–III, V)*

First, "[i]n § 1983 actions, federal courts borrow state statutes of limitations to determine the applicable time period in which a plaintiff may bring a claim." *Green v. City of Southfield*, 759 F. App'x 410, 414 (6th Cir. 2018) (citation omitted); *see Owens v. Okure*, 488 U.S. 235, 250 (1989) ("courts considering § 1983 claims should borrow the State's general or residual personal injury statute of limitations"). "Section 1983 claims in Michigan must be raised within the three-year limitations period applicable to personal-injury suits." *Syzak v. Dammon*, No. 15-2468, 2017 WL 5712670, at *2 (6th Cir. 2017) (citing *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986)). "Although state law provides the statute of limitations to be applied in a § 1983 damages action, federal law governs the question of when that limitations period begins to run." *Wolfe v. Perry*, 412 F.3d 707, 713–14 (6th Cir. 2005) (internal quotations omitted). "Because an action generally accrues when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred, we typically determine the accrual of a § 1983 action by looking to the event that should have alerted the typical lay person to protect his or her rights." *D'Ambrosio v. Marino*, 747 F.3d 378, 384 (6th Cir. 2014) (internal quotations committed). Thus, the three-year statute of limitations period applies to Counts I, III, and V—federal claims asserted under 42 U.S.C. § 1983—and those claims accrued when Plaintiff knew or should have known the causes of action.

Next, Plaintiff's Michigan constitutional tort claim in Count II is also subject to the three-year statute of limitations. *See* MICH. COMP. LAWS § 600.5805(2). However, the state-law claim is governed by the rule for accrual in Michigan's personal injury statute of limitations: "the claim

accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results." MICH. COMP. LAWS § 600.5827.

Here, Plaintiff has alleged that Defendants continue to "repeatedly enter and exit the Property with their buses," and that Defendants' actions began "sometime shortly after the [October 2020] Operating Agreement was executed" (Am. Compl. ¶¶ 19, 45, 86). As to Plaintiff's Michigan constitutional tort claim, Plaintiff alleges that Defendants "are abusing their position as a public entity" and "Plaintiff has suffered and continues to suffer irreparable harm and damages" (*id.* ¶¶ 73, 77). It is thus plausible that some of the actions of which Plaintiff complains in its § 1983 and state constitutional tort claims occurred within the three-year limitations periods. Notably, Plaintiff has affirmed that it "is not suing for damages that may have been caused outside of the applicable statute of limitations period" (ECF No. 24 at PageID.341). The Court therefore declines to dismiss Plaintiff's Counts I–III and V as time-barred.

  b. *Michigan Constitutional Takings Claim (Count IV)*

Defendants claim that the limitations period for Plaintiff's Michigan constitutional takings claim, an inverse condemnation claim, is six years (ECF No. 22-1 at PageID.316 (citing *Hart v. City of Detroit*, 331 N.W.2d 438, 444–45 (Mich. 1982))). *See* MICH. COMP. LAWS § 600.5813 ("All other personal actions shall be commenced within the period of 6 years after the claims accrue and not afterwards unless a different period is stated in the statutes."). However, in Michigan, courts have explained that the limitations period for an inverse condemnation claim is fifteen years if the owner has a present interest in the property. *Difronzo v. Vill. of Port Sanilac*, 419 N.W.2d 756 (Mich. Ct. App. 1988); *see also Lakeside Resort, LLC v. Crystal Tp.*, No. 324799, 2016 WL 1358584, at *15 (Mich Ct. App. 2016) ("*Difronzo* has represented the law in Michigan on the issue presented for nearly 30 years, and this Court in multiple unpublished opinions has

recognized and honored the 15-year limitations period pursuant to *Difronzo* in the context of inverse condemnation actions."). Because Plaintiff alleged an ownership interest (Am. Compl. ¶¶ 11, 93), the Court will apply the fifteen-year limitations period under *Difronzo*.

The Michigan Supreme Court has developed a "stabilization doctrine" for the accrual of inverse-condemnation claims. *Mays v. Gov. of Mich.*, 954 N.W.2d 139 (Mich. 2020). Under this doctrine, the limitations period for an inverse condemnation claim in which a plaintiff alleges "a continuous wrong by the condemnor" "does not begin to run until the consequences of the condemnor's actions have stabilized." *Hart*, 331 N.W.2d at 504. "The precise point in time when the running of the limitation period is triggered is determined by the facts and circumstances of each case." *Id.* Although a plaintiff in Michigan may not revive stale claims even if the claims are part of a series of "continuing violations," a plaintiff's failure to timely sue on the first violation in a series does not grant a defendant immunity to keep committing wrongful acts of the same nature. *See Twp. of Fraser v. Haney*, 983 N.W.2d 309, 314 (Mich. 2022) (citing *Garg v. Macomb Co. Community Mental Health Servs.*, 696 N.W.2d 646 (Mich. 2005)).

Here, Plaintiff claims that Defendants have continuously and repeatedly "enter[ed] and exit[ed] the Property with their buses and each independent act or action by Defendants continuously damages the Property and prevents or limits [Plaintiff's] ordinary use of the Property" (Am. Compl. ¶ 98). Based on the Complaint, it is plausible that even if Defendants began the alleged taking outside of the limitations period, Plaintiff's claim is timely to the extent that Plaintiff "does not seek to reach back and remedy . . . violations that occurred outside the period of limitations" and instead "seeks to remedy only present violations" occurring within the limitations period. *Fraser*, 983 N.W.2d at 310. The Court therefore declines to dismiss Plaintiff's Count IV as time-barred.

In sum, Defendants' motion to dismiss Plaintiff's claims as time-barred is properly denied.

### 2. Failure to State a Claim

Construing the First Amended Complaint in the light most favorable to Plaintiff and accepting all well-pleaded factual allegations as true, the Court determines that Plaintiff has not stated a claim on which relief may be granted as to its federal claims in Counts I, III, and V. Accordingly, the Court grants Defendants' motion to dismiss the federal claims and declines to exercise supplemental jurisdiction over Plaintiff's state-law claims in Counts II and IV.

#### a. Federal Claims

The Court begins its discussion of Plaintiff's allegations under federal law by addressing Plaintiff's takings claims in Counts I and III. Next, the Court will turn to Plaintiff's due process claim in Count I. Finally, the Court will address Plaintiff's civil conspiracy claim in Count V.

##### i. Takings[3]

Defendants argue that Plaintiff failed to plead a takings claim because whether a landowner has opened its property to the general public affects the taking analysis and the government does not take a property interest when it merely asserts a pre-existing limitation upon the landowner's title (ECF No. 22-1 at PageID.319–320).

Plaintiff argues in response that it has properly pled a takings claim against all three Defendants and that the First Amended Complaint outlines the nature of the taking by Defendants and the unreasonable interference that Defendants committed upon Plaintiff's property interests (ECF No. 24 at PageID.348, 350).

Plaintiff has not plausibly alleged a federal takings claim.

---

[3] Plaintiff alleges a "de facto taking" claim in Count I. In Count III, Plaintiff alleges a claim under the Takings Clause of the Fifth Amendment of the U.S. Constitution. The Court addresses both takings claims together.

The Takings Clause of the Fifth Amendment prohibits taking "private property ... for public use, without just compensation." U.S. CONST. amend. V. The clause applies to state governments through the Fourteenth Amendment. *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001) (abrogated on other grounds). A property owner's right to exclude is "one of the most essential sticks in the bundle of rights that are commonly characterized as property." *Kaiser Aetna v. United States*, 444 U.S. 164, 176 (1979). In its decision in *Cedar Point Nursery v. Hassid*, ____ U.S. ____, 141 S. Ct. 2063, 2071 (2021), the Supreme Court noted that "physical appropriations constitute the clearest sort of taking, and we assess them using a simple, *per se* rule: The government must pay for what it takes" (internal quotations omitted). The Court elaborated that a taking requires that the government "appropriates a right" for itself or a third party. *Id.* at 2072. In interpreting *Cedar Point*, the Sixth Circuit has explained that a plaintiff fails to state a takings claim where it does not allege that because of the government action, members of the public have 'a right to physically invade' its property. *Golf Vill.*, 14 F.4th at 619 (quoting *Cedar Point*, 141 S. Ct. at 2074) 6. In *Golf Village*, the Sixth Circuit affirmed a district court's dismissal of a takings claim where plaintiffs failed to allege that they were no longer able to exclude the public from accessing the property at issue or that the government preempted their right to use and enjoy their property. *Golf Vill.*, 14 F.4th at 622.

Here, as in *Golf Village*, Plaintiff has not plausibly alleged that it was deprived of its right to exclude or its right to use and enjoy its Property. Plaintiff, the owner of a shopping mall open to the public, alleges that Defendants operated buses that use its private roads and installed a bus stop on the Property (Am. Compl. ¶¶ 15–16, 22). However, Plaintiff has not made any allegations that such use deprives Plaintiff of its right to exclude the public from its property, should Plaintiff attempt to exercise that right. Plaintiff has alleged that Defendants' actions in operating the bus

11

stop and exchange have damaged Plaintiff's property interest in operating their mall business (*id.* ¶¶ 11, 21) and that the buses have produced an increase in damage and wear and tear to the Property, excessive traffic, and business losses (*id.* ¶ 26). However, Plaintiff has not alleged that the presence of buses deprives it of its right to use and enjoy the Property beyond what Plaintiff has permitted by operating a commercial business.[4] In short, the Amended Complaint fails to allege sufficient factual allegations demonstrating a plausible takings claim under federal law, and Plaintiff's takings claims in Counts I and III are properly dismissed.

      *ii.*    *Due Process*[5]

Defendants argue that Plaintiff cannot prevail on its due process claim because it "failed to plead sufficient factual allegations showing that any Defendant deprived Plaintiff of a protected property interest" (ECF No. 22-1 at PageID.323). Specifically, Defendants argue that the right to just compensation is owed to the owner at the time of the alleged taking, and Plaintiff admits that the bus stop was erected before it purchased the Property (*id.*). Thus, Plaintiff never had the right to just compensation (*id.*). Defendants further contend that "Plaintiff cannot complain of a lack of notice when it knowingly purchased the property after the bus stop had been placed thereon" (*id.*).

Plaintiff argues in response that "Defendants' claims that their actions were appropriate because the Crossroads Mall is a location open to the public is further evidence of their arbitrary and conscience shocking actions" (ECF No. 24 at PageID.353).

---

[4] In its Response Brief, Plaintiff does not address *Cedar Point* or *Golf Village*, which clarified the elements of a federal takings claim; as to its federal takings claim, Plaintiff only argues that Defendants committed an "unreasonable interference," upon its property interests and that the First Amended Complaint provides a "clear description of the actions taken by Defendants that constitute a de facto taking of [Plaintiff's] property" (ECF No. 24 at PageID.350).

[5] Although Plaintiff "did not separately include a count for a standalone due process count" (ECF No. 24 at PageID.350), Plaintiff has alleged violations of due process within Count I. *See* Am. Compl. ¶ 61.

Plaintiff has not plausibly alleged a due process claim.

To establish a due process violation, a plaintiff must demonstrate: "(1) that it had a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment; (2) that it was deprived of that protected interest within the meaning of the due process clause; and (3) that the state did not afford it adequate procedural rights before depriving it of its protected interest." *Wedgewood Ltd. P'ship I v. Twp. of Liberty, Ohio*, 610 F.3d 340, 349 (6th Cir. 2010). To prevail, a plaintiff must show that it was deprived of a liberty or property interest, either through an "established state procedure[] which itself violates procedural due process rights" or by Defendants' "random and unauthorized" actions that cannot be compensated for through any available state remedy. *Id.* at 349–50 (citations omitted).[6]

In its First Amended Complaint, Plaintiff fails to sufficiently allege how Defendants' actions have diminished a property interest. In *Golf Village*, the Sixth Circuit affirmed the district court's dismissal of the plaintiff's procedural due process claim for the same reasons it rejected the takings challenges: "[t]he procedural due process claim is based on the same rights to exclude and to use and enjoy property that we found could not support a takings claim." 14 F.4th at 623. Likewise, here, Plaintiff's pleading deficiencies with respect to its takings claim render the factual

---

[6] Although Plaintiff references substantive due process in its Amended Complaint (Am. Compl. ¶ 67), substantive due process claims may not be asserted "as a stand-in to address a failed takings claim." *Ostipow v. Federspiel*, 824 F. App'x 336, 345 (6th Cir. 2020); *see also Grainger, Jr. v. Cnty. of Ottawa*, No. 1:19-CV-501, 2021 WL 790771, at *13 (W.D. Mich. 2021) (holding that the plaintiff must bring his claim under the Fifth Amendment Takings Clause, not under the Due Process Clause, where the plaintiff could not meaningfully distinguish the substantive due process claim from his takings claim); *Kiser v. Kamdar*, 831 F.3d 784, 791 (6th Cir. 2016) ("The Supreme Court has repeatedly held that where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing such a claim.") (internal quotations omitted). Accordingly, Plaintiff's substantive due process claim is precluded by its takings claim.

13

allegations lacking as to its due process claim.  Plaintiff alleges that approximately 3,136 buses traverse through its property on a monthly basis and that each bus trip exerts an extreme amount of weight, pressure, and wear and tear on the Property (Am. Compl. ¶¶ 24–25).  In its Response Brief, Plaintiff references these allegations in support of its due process claim (ECF No. 24 at PageID.353); however, these statements do not amount to plausible allegations that Defendants deprived Plaintiff of a property right, such as the right to exclude or to use and enjoy property.  Moreover, there is no indication in Plaintiff's First Amended Complaint that the process afforded by the state was inadequate, other than Plaintiff's conclusory allegation that "[p]rior to Defendants' actions in taking Plaintiff's property interest in the Property and Plaintiff's business of operating a mall, Plaintiff received no notice and had no opportunity to be heard" (Am. Compl. ¶ 68).  Thus, the Amended Complaint fails to sufficiently allege facts demonstrating a plausible federal due process claim, and Plaintiff's due process claim in Count I is properly dismissed.

      *iii.*    *Civil Conspiracy*

As to Plaintiff's civil conspiracy claim in Count V, Defendants argue that Plaintiff's allegations regarding a concerted action "are as vague as they are illogical," and that the Amended Complaint "fails to include specific and plausible *factual* allegations identifying a single plan, a shared objective, or an overt act committed by the Defendants in furtherance of an illegal objective" (ECF No. 21-1 at PageID.326) (emphasis in original).  Plaintiff wholly fails to respond to Defendants' arguments.  *See* Pl. Resp., ECF No. 24.  In reply, Defendants argue that Plaintiff has therefore abandoned the civil conspiracy claim (ECF No. 28 at PageID.459).  The Court agrees.  Consequently, Plaintiff's civil conspiracy claim in Count V is properly dismissed.

### iv. Leave to Amend

As an aside, in the conclusion of its Response Brief, Plaintiff requests leave to amend the First Amended Complaint should the Court grant Defendants' motion to dismiss (ECF No. 24 at PageID.354). "Ordinarily, if a district court grants a defendant's 12(b)(6) motion, the court will dismiss the claim without prejudice to give parties an opportunity to fix their pleading defects." *CNH Am. LLC v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW)*, 645 F.3d 785, 795 (6th Cir. 2011). However, "it is not the district court's role to initiate amendments." *Just. v. Petersen*, No. 21-5848, 2022 WL 2188451, at *4 (6th Cir. 2022) (quoting *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 438 (6th Cir. 2008)). *See, e.g.*, *Golf Vill. N., LLC v. City of Powell, Ohio*, 14 F.4th 611, 624 (6th Cir. 2021) (holding that a district court does not abuse its discretion in dismissing an amended complaint with prejudice where a plaintiff never moves for leave to file a second amended complaint); *Crosby v. Twitter, Inc.*, 921 F.3d 617, 627–28 (6th Cir. 2019) (same); *see also CNH Am. LLC*, 645 F.3d at 795 (affirming dismissal with prejudice of initial complaint). In light of Plaintiff's previous amendment, Defendants' request for the Court to grant their motion to dismiss the case with prejudice (ECF No. 22-1 at PageID.329; ECF No. 28 at PageID.460), and the fact that Plaintiff has not provided a proposed second amended complaint, the Court denies Plaintiff's request for leave to amend the First Amended Complaint.

### b. State-Law Claims

Having dismissed Plaintiff's federal claims in Counts I, III, and V, the Court, in its discretion, declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims in Counts II and IV and will dismiss these claims without prejudice. *See* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim

under subsection (a) if—(3) the district court has dismissed all claims over which it has original jurisdiction"); *Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims...."). *See, e.g.*, *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) ("Upon dismissing Brooks' federal claims, the district court properly declined to exercise supplemental jurisdiction over Brooks' remaining state-law claims.").

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (ECF No. 22) is GRANTED; specifically, Plaintiff's federal claims (Counts I, III, and V) are DISMISSED WITH PREJUDICE.

**IT IS FURTHER ORDERED** that Plaintiff's state-law claims (Counts II and IV) are DISMISSED WITHOUT PREJUDICE because the Court declines to exercise supplemental jurisdiction over them.

Because this Opinion and Order resolves all pending claims in this matter, a corresponding Judgment will also enter.  *See* FED. R. CIV. P. 58.

Dated:  January 16, 2024                         /s/ Jane M. Beckering
                                                 JANE M. BECKERING
                                                 United States District Judge